SMITH, Admrx., Plaintiff, v. CITY OF WASHINGTON COURT HOUSE et, Defendants.

Common Pleas Court, Fayette County.

No. 21650. Decided February 28, 1955.

Harvey Crow, Cleveland, for plaintiff.

William M. Junk, City Solicitor, W. S. Paxson, Washington C. H., for defendants.

## OPINION

By CASE, J.

Plaintiff's original petition herein was filed on August 5, 1953. The defendants subsequently filed thereto a motion to strike certain allegations as being irrelevant, immaterial and redundant. Said motion was sustained in part and overruled in part and, on June 25, 1954, plaintiff filed her amended petition which is now before the court upon defendants' demurrer thereto.

The Plaintiff administratrix through her amended petition seeks to recover a judgment against the City of Washington and two certain policemen for damages for what she claims to have been the wrongful death of Clayburn Earl Smith, decedent.

Plaintiff's amended petition alleges in part as follows:

"The Plaintiff further says that the defendant, the city of Washington Court House, Ohio, is a municipal corporation, duly organized and existing under the laws of the state of Ohio.

"The Plaintiff further says that the defendant Robert Williams at the time alleged in this petition was an employee and agent of the city of Washington Court House, Ohio. That at said time he was employed as a police officer of said city.

"The plaintiff further says that Walter Marshall at the time and place mentioned in this petition was an employee and agent of the city of Washington Court House, Ohio, and at said time was employed as a police officer of said city.

"The plaintiff further says that the defendants Robert Williams and Walter Marshall were on duty as such police officers at the time and place here in after mentioned as employees and agents of the city of Washing-

ton Court House, Ohio, and performing their duties as such police officers for said city.

"Plaintiff further says that in the early hours in the morning of June 14, 1953, at about 3:30 o'clock, decedent Clayburn Earl Smith was driving his 1951 Ford automobile on the streets of Washington Court House, Ohio, in a legal and lawful manner when he became afflicted and sick from a heart attack. That said heart attack caused Clayburn Smith (Earl) to lose control of his car and damage the same. That he was in a weak physical condition when the defendants Robert Williams and Walter Marshall, police officers of the city of Washington Court House, Ohio, arrived at the scene of said accident, arrested Clayburn Earl Smith, took him to the city jail where he died.

"That upon arriving at the scene of said accident the defendants Robert Williams and Walter Marshall were informed by said decedent that he was sick and needed medical care. That said police officers willfully and maliciously refused to give or permit said Clayburn Earl Smith to have medical care. That said police officers willfully and maliciously refused to give or permit decedent Clayburn Earl Smith to have medical care at that time or any time. That instead of taking said Clayburn Earl Smith to the hospital they forcefully, maliciously and willfully took him to the city jail, placed him in jail where he died.

"Plaintiff further says that as a result of the negligence and carelessness of the defendants Robert Williams and Walter Marshall as agents and employees of the city of Washington Court House the plaintiff and those who were dependent upon said Clayburn Earl Smith have been damaged.

"Plaintiff further says that Clayburn Earl Smith left surviving him his mother and father, who were dependent upon him, the said Mr. and Mrs. Oscar Smith of Washington Court House, Ohio, for whose benefit this action is brought.

"Plaintiff further says that the defendants wrongfully and negligently in a careless manner and without any just cause confined the decedent in the Washington Court House city jail where said decedent died. That the proximate cause of said death was the wrongful and negligent, careless acts of the defendants and in the alternative the willful and intentional acts of the defendants in refusing to permit or give to the decedent Clayburn Earl Smith the medical care that was required at that time

"That the defendants knew or should have known that the failure to give medical care required at that time after having been informed by the decedent that he was ill and needed such care might or would cause death.

"Plaintiff further says that the defendant the city of Washington Court House was lax and careless and negligent in having on their police force as employees and agents of said city the defendants Robert Williams and Walter Marshall whose conduct and acts were the proximate and direct result of the death of Clayburn Earl Smith.

"Plaintiff further says that she was forced to incur expenses of a funeral and other expenses connected with a funeral service. That the plaintiff's decedent died as a direct result of the defendants acts and left surviving him Mr. and Mrs. Oscar Smith, the next of kin for whose benefit this action is brought and who by reason of such death have been damaged in the sum of one hundred thousand dollars ($100,000.00)."

To plaintiff's amended petition, the defendants filed the following demurrer and memorandum:

"Come now the defendants and demur to the amended petition filed herein for the reason that it appears on the face of said amended petition that there is a misjoinder of parties defendant."

"MEMORANDUM

"26 O Jur., p. 671, Sec. 661; French v. Construction Co., 76 Oh St 509; Schulz v. Brunhoff, 22 Oh Ap 220; Stevenson v. Hess, 10 Abs 43; Losito v. Kruce, 136 Oh St 190; Herron v. Youngstown, 136 Oh St 190."

Sec. 11309 GC, provides in part as follows:

"The defendant may demur to the petition only when it appears on its face either:

"'* * *

"5. That there is a misjoinder of parties plaintiff or defendant;"

Sec. 2309.08 R. C., provides in part as follows:

"The defendant may demur to the petition only when it appears on its face that:

"'* * *

"(E) There is a misjoinder of parties plaintiff or defendant;"

It is noted that defendants cite 26 O. Jur., page 671, Section 661, in support of said demurrer; and that the authority so cited reads as follows:

"No. 661.—Joinder of Master and Servant.—Although the view taken by a majority of the courts is that employer and employee are jointly liable and suable for the employee's wrongful act, **in Ohio, an action cannot be maintained jointly against master and servant for the wrongful and negligent act of the latter, if, in the particular case, the master's liability for such wrongful and negligent act arises solely from the relationship between them, under the doctrine of respondeat superior,** and not by reason of the master's personal participation in the wrongful or negligent act. To warrant the joinder of the master as defendant in such an action, **the negligent act must be, either in fact, or by legal intendment, the joint or concurrent act of the master and servant.**" (Emphasis by the court.)

It, therefore, follows that the court must next consider whether or not plaintiff's petition sets forth any operative facts which could impose any liability upon the City of Washington, for the alleged wrongful and negligent acts of said police officers, arising solely from the relationship between the city and said police officers under the doctrine of respondeat superior; and whether or not such alleged negligent acts could be, either in fact, or by legal intendment, the joint or concurrent act of the alleged master and servant relationship.

In 28 O. Jur., pages 959 and 960, Section 605, it is stated as follows:

"The creation and maintenance of a police department by a municipality are done in the exercise of its governmental functions, and the municipality is not, in the absence of statutory provision, liable in damages for injuries resulting from the negligence of such department, or any of its members. Under this rule, a municipality is not liable for injuries resulting from the negligent operation of a police patrol wagon, or from the act of a mounted policeman in negligently riding down a pedestrian, or for torts committed by police officers in making arrests, or for assaults upon prisoners in their custody."

One of the leading cases in Ohio is **Aldrich v City of Youngstown, 106 Oh St 342**, wherein our Supreme Court stated the law of Ohio to be as follows:

"1. The creation and maintenance of a police department by a municipality are done in the exercise of its governmental functions. The performance of an act by an official of such department is not the performance of a ministerial act for which a municipality becomes liable under the maxim. **respondeat superior.**

"2. A municipal corporation is not, in the absence of a statutory provision, liable in damages to one injured for the negligent acts of its police department. or any of its members. (**Fowler, Admx. v. City of Cleveland, 100 Oh St 158**, overruled; **Frederick, Admx. v. City of Columbus, 58 Oh St 538**, and **Wheeler v. City of Cincinnati, 19 Oh St 19**, followed and approved.)"

At page 344, in Aldrich v. Youngstown, supra, the Supreme Court stated in part as follows:

"* * * Without citing specific cases upon the subject which sustain the rule announced, we will content ourselves with citing some of the texts under which these authorities may be found:

" 'A municipal corporation can under ordinary conditions incur no liability by reason of the defaults of its police department. The prevention of crime is a purely governmental function, undertaken for the benefit of the public at large, and, if police officers are appointed and paid by the various municipalities, this is done merely as a matter of convenient administration. Their duties are ordinarily prescribed by law. and they are public officers and not the servants or agents of the city or town in which they serve.' 19 Ruling Case Law, 1119, Section 399."

The Court of Appeals for Franklin County, which is also the Court of Appeals for Fayette County, has consistently cited and followed the law as declared by the Supreme Court in the case of Aldrich v. Youngstown, supra. In the case of **Schmolzer v. Columbus, 2 Abs 329**, our Court of Appeals held:

"1. The determination of this case is controlled by the decision of the Supreme Court in the **Aldrich case, 106 Oh St 348**. The municipality is not liable for injuries growing out of the exercise by the municipality of its governmental power, and there is no distinction between a case where the municipality acts under a statute and a case where it acts under its charter as in the instant case."

In the case of **Wittenbrook, Admx., v. Columbus, 33 Abs 586**, decided February 13, 1941, our Court of Appeals held:

"1. The maintenance of a county jail by a municipality is a governmental function.

"2. No liability exists against a municipality except where the act complained of was in the performance of a ministerial function, or if a governmental function, where a statutory remedy is provided.

"3. There being no statutory remedy provided for the death of a prisoner due to lack of medical care in a county jail maintained by a municipality, and the maintenance of such jail being a governmental function. the city is not liable for the prisoner's death."

In arriving at its decision in the Wittenbrook case, supra, at page 588, our Court of Appeals stated in part as follows:

"The principle of law is handed down from the common law founded on the ancient doctrine 'that the king can do no wrong.'

"The principle is very generally followed throughout the United States. It is provided under the Constitution of Ohio that the state may not be sued except as provided by law. The Legislature of Ohio has not exercised its privilege except in one instance.

"The courts have held that since counties are subdivisions of the state they may not be sued except the right is granted by a statutory enactment. Municipalities receive their existence by legislation and are granted powers, some of which are governmental and others ministerial. In all matters relating to municipal functions, rights of action exist against municipal corporations the same as private corporations, but acts which partake of the nature of governmental functions are not actionable except as authorized by statutory law. These principles of law are as old as the state itself, with occasional modification of the rules through legislative enactment. * * *."

Judge Barnes, who wrote the opinion in the Wittenbrook case, supra, analyzed the issues involved with the utmost clarity and applied the established principles of law to the facts therein with enviable precision and brevity which this court cannot presume to improve upon.

These same principles of law were cited with approval by the Supreme Court of Ohio in **Davis v. Shutrump Co., 140 Oh St, 89,** at **page 96,** wherein Judge Hart stated in part as follows:

"Accordingly, the rule almost universally recognized is that in the absence of statutory provision to the contrary there can be no recovery against a municipal corporation occasioned by its negligence or nonfeasance in the exercise of functions essentially governmental in character. City of Akron v. Butler, supra; City of Wooster v. Arbenz, supra; **City of Portsmouth v. Mitchell Mfg. Co., 113 Oh St 250, 148 N. E., 846; 43 A. L. R., 961; Selden v. City of Cuyahoga Falls, 132 Oh St 223, 225, 6 N. E. (2d), 976; Aldrich v. City of Youngstown, 106 Oh St 342, 140 N. E., 164, 27 A. L. R., 1497.** * * *"

In plaintiff's memorandum contra defendants' demurrer herein, plaintiff contends in part as follows:

"Our petition claims that the city was careless and negligent in placing the other defendants in a place of authority, which might be abused and was abused by an irresponsible officer.

"Power and authority improperly used and abused might be as dangerous as any other dangerous instrumentality. If death results from both, what difference how—the man is still dead.

"Our petition claims that the city knew or should have known, that their agents were not able to exercise the good judgment of a prudent person, because of their employing as their agents, persons with inadequate training and incompetent individuals.

"The City of Washington C. H. cannot avoid liability when they hire police protection for the public and arm them with the strong arm of the law, when such individuals are unfit, untrained, uneducated and unprepared for such a job.

"If said officers are incapable of performing their duties and lack the experience necessary for the job and while in the course of their duty, damages are sustained by a third party, such negligence is the **combined negligence** of all the defendants and theirs is a joint liability."

158

With respect to these contentions so made in plaintiff's memorandum, it is significant that no statutory or case law is cited in support thereof and this court has been unable to find any statute of Ohio or any decision rendered by the courts of this state which would support the claims so made by plaintiff. Nor do there appear to be in plaintiff's petition any allegations claiming "that **the city knew or should have known,** that their agents were not able to exercise the good judgment of a prudent person, because of their employing as their agents, persons with inadequate training and incompetent individuals." And, even though such allegations might have been set forth in plaintiff's petition, there appears to be no statutory or case law in Ohio which would operate to impose such liability upon the City of Washington under the facts and circumstances otherwise set forth in plaintiff's petition.

Therefore, it must be concluded that the contentions set forth in plaintiff's memorandum contra defendants' demurrer herein are without merit in law and fact.

For more than thirty years since the decision of the Supreme Court of Ohio in the Aldrich case, supra, it has been the established law of Ohio that, in the absence of a statutory provision, **"police officers appointed by a city are not its agents or servants** in such a sense as to render it responsible for their unlawful or negligent acts in the discharge of their public duties as policemen." **(106 Oh St 342 at 345.)**

It is the duty and obligation of this court to apply established principles of law to the operative facts alleged in plaintiff's petition and, upon due consideration of those facts and circumstances so alleged and the law applicable thereto as hereinabove set forth and discussed, the court finds that there is a misjoinder of parties defendant; and that, by reason thereof, defendants' demurrer herein is well made and should be sustained.

The court further finds that counsel for defendants should prepare an entry accordingly with appropriate notation therein of exceptions on behalf of plaintiff and thereupon submit same to counsel for plaintiff and to this court for approval within ten days.