**Thomas MAYNARD et al., Plaintiff,**

**v.**

**Daniel KEAR et al., Defendant.**

**No. C75–256.**

United States District Court,
N. D. Ohio, E. D.

July 19, 1979.

---

Lawrence Landskroner, Landskroner & Weaver Co., L.P.A., Cleveland, Ohio, for plaintiff.

Michael R. Gareau, Gareau & Gareau, Rocky River, Ohio, Leonard Yelsky and David A. Snow, Yelsky, Eisen & Singer, James G. Gowan, Hauxhurst, Sharp, Mollison & Gallagher, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Plaintiffs have presented a claim for relief pursuant to 42 U.S.C. Secs. 1983, 1985, and 1986, the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and state common law. Plaintiffs are Thomas Maynard, his wife, Joyce Maynard, and the owners of the apartment building in which the Maynards resided. Defendants are North Olmsted police officers Russ King, Jr., Marion Taylor, and Raymond A. Brow, North Olmsted prosecutor Donald Albenze, the City of North Olmsted, Ohio, and Daniel Kear and Jesse T. Mathusa, who were allegedly employees or agents of the Broderick Bonding Agency, itself a defendant, located in Fairfax, Virginia. All defendants have moved for summary judgment. Summary judgment is granted for defendants King, Taylor, Brow, Albenze, and the City of North Olmsted. Summary judgment is denied for defendants Kear, Mathusa, and Broderick Bonding Agency.

The gravamen of the complaint is that Kear and Mathusa, aided in part by the other defendants, forcibly entered the Maynards' apartment in North Olmsted, Ohio, seized and beat Thomas Maynard, and took him forcibly to Virginia in order to secure his appearance before a Virginia court and to avoid forfeiture of a $100 bond posted by Broderick Bonding Agency for Thomas Maynard.

I. Section 1983, Fourth Amendment, and Fourteenth Amendment Claims

In order to establish a violation of 42 U.S.C. Sec. 1983, plaintiffs must establish: 1) that defendants caused plaintiff to be deprived of a right secured by the Constitution or a statute of the United States, and 2) that defendants in so doing acted under color of any statute, ordinance, regulation, custom or usage of a State. The Fourth and Fourteenth Amendments similarly require state action. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cash v. Williams*, 455 F.2d 1227 (6th Cir. 1972).

Common law principles of conspiracy require a meeting of the minds, an understanding, an explicit or implicit agreement or concert of action to demonstrate a conspiracy. *Adickes v. S. H. Kress & Co.,* supra; *Croy v. Skinner,* 410 F.Supp. 117 (N.D.Ga.1976). The pleadings and discovery material show that no such understanding or agreement was reached between the bondsmen on the one hand and the city prosecutor and city police officers on the other hand. Also, the pleadings and discovery material establish that the city prosecutor and city police officers did not themselves directly violate any Fourth or Fourteenth Amendment right of the plaintiffs. Therefore, the defendant city prosecutor and city police officers are granted summary judgment in connection with the Section 1983, Fourth Amendment and Fourteenth Amendment claims of the plaintiffs.

### A. City of North Olmsted

Plaintiffs claim that the City of North Olmsted, Ohio, is liable for failure to provide police protection and is liable vicariously for the actions of the city prosecutor and police officers. In the absence of extraordinary circumstances, under Ohio law a city cannot be held liable for failure to provide police protection. *Aldrich v. Youngstown,* 106 Ohio St. 342, 140 N.E. 164 (1922); *Smith v. Washington Court House,* 124 N.E.2d 794 (Fayette County Common Pleas, 1955). The police owed no special duty to protect plaintiffs. Therefore, plaintiffs do not state a claim for relief for failure to provide police protection.

Federal law and Ohio law is clear that a city is not vicariously liable for the acts of its employees. *Monell v. Department of Social Services, City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Aldrich v. Youngstown, supra.* Therefore, the City of North Olmsted is entitled to summary judgment.

### B. City Prosecutor

Joyce Maynard telephoned the police for assistance as Kear and Mathusa seized Thomas Maynard and prepared to take him away. After the police officers arrived, Kear and Mathusa, along with Thomas Maynard who was handcuffed in their car, were instructed to accompany the police officers to the police station. The police officer in charge, Brow, telephoned Albenze, the prosecutor, at home around 2 a.m., to explain the situation and to seek advice on whether to charge Kear and Mathusa with a crime. Brow deposition, pp. 11–12. After extensive discussion, Albenze was unable to determine a specific charge on which Kear and Mathusa could be held. Brow then called Taylor, head of the Detective Bureau. Albenze telephoned Brow after Brow talked with Taylor. Since no one could determine a specific charge against Kear and Mathusa, Albenze directed Brow to release them. Brow deposition, p. 15.

On the basis of the pleadings and discovery, it is apparent that Albenze did not act jointly with Kear and Mathusa and reached no agreement with them to deprive plaintiffs of any federal constitutional rights or to violate state law. Albenze merely advised the police officers on the applicable law concerning the situation and decided not to charge Kear and Mathusa with a crime. Therefore, plaintiffs have failed to state a claim for relief against Albenze and summary judgment is appropriate.

Albenze also is entitled to judgment as a matter of law on the basis of absolute immunity. Albenze as prosecutor acted within the scope of his duties in advising the police officers and deciding not to charge Kear and Mathusa with a crime. *Tyler v. Ryan,* 419 F.Supp. 905 (E.D.Mo. 1976); *Boyd v. Huffman,* 342 F.Supp. 787 (N.D.Ohio 1972). It is well established that such discretionary acts by a prosecutor must be protected from civil liability. Therefore, Albenze is absolutely immune from the plaintiffs' claim. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

### C. City Police Officers

The participation of the North Olmsted police officers, like that of the prosecutor,

was limited and not blameworthy. The police first learned of Kear and Mathusa when Kear asked King at an all-night food store for directions to the Maynards' apartment. King deposition, p. 10. Kear explained that he had a bench warrant from Virginia for Thomas Maynard's arrest. King deposition, p. 11. King instructed Kear to go to the police station to inform the police of his authority and planned activities. King deposition, p. 11. At the police station, Brow inspected Kear's identification and the warrant. Brow deposition, p. 8. Brow then told Kear that the police had no power to serve the warrant and that the police "couldn't have anything to do with it whatsoever." Brow deposition, p. 9. Brow warned Kear against causing any trouble, and Kear assured Brow there would be no trouble. Brow deposition, p. 9.

About twenty-five minutes later, the police received a call reporting a fight in the parking lot of Maynard's apartment complex. Brow deposition, p. 9. Three police units were sent in response. The police officers stopped Kear and Mathusa as they were ready to drive away with Thomas Maynard handcuffed in the back seat. Kear, Mathusa and Maynard were taken to the police station as the officers investigated by speaking with witnesses, including Kear and Joyce Maynard, by examining the apartment, and by talking with Albenze, the prosecutor, and Taylor, the head of the Detective Bureau. Brow deposition, pp. 13–14. After Albenze and Taylor concluded that Kear and Mathusa had not violated any law, Brow released Kear and Mathusa and allowed them to take Maynard with them.

Kear and Mathusa had dragged Maynard out of his apartment clothed only in his underwear. The incident occurred in January. Maynard was handcuffed and bloody around the nose. King deposition, p. 14. Maynard was never taken into the police station during the investigation. He was given a coat and pair of pants to wear, but no shoes or socks. Thomas Maynard deposition, p. 21. Maynard was provided no medical attention. The police officers assert that Maynard stated that he needed no medical attention; however, Maynard claims he needed medical attention. Brow deposition, pp. 14; King deposition, pp. 14, 23, 54; Maynard deposition, pp. 18, 20, 21. The police refused Maynard's request to be housed overnight in the city jail. Maynard deposition, p. 24. Maynard was not struck after the police officers arrived and no police officer saw Maynard hit. Maynard deposition, pp. 24, 32, 50. Maynard never received medical treatment for any alleged injuries, but has received psychiatric assistance since the incident. Maynard deposition, pp. 28–31.

■ The pleadings and discovery materials establish that no police officer acted jointly or reached an understanding with Kear and Mathusa to seize Maynard by forcibly entering his apartment and forcibly subduing him. There was no conspiracy between any police officer and Kear and Mathusa to deprive Maynard of his federal constitutional rights or to violate state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Police contact with Kear and Mathusa was purely for investigative purposes in the line of police duty. No joint enterprise existed between the police and the bondsmen. In fact, Brow stated clearly and emphatically to Kear that Kear was "entirely on (his) own." Brow deposition, p. 9. Plaintiffs present no facts, besides conclusory allegations, that demonstrate a concert of action between the police and the bondsmen. Therefore, plaintiffs have failed to state a claim against King, Taylor, and Brown, and summary judgment is appropriate.

■ The police officers also are entitled to judgment as a matter of law on the basis of a qualified immunity. If the police officers demonstrate good faith performance of their duties, then they are immune from civil liability. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Though the test of good faith has subjective as well as objective elements and thus is not usually an appropriate matter for determination on summary judgment, *Foster v. Zeeko*, 540 F.2d 1310 (7th Cir. 1976), sum-

mary judgment can be granted in cases such as the one at bar where the pleadings and discovery establish that the police officers did act in good faith and that reasonable grounds existed for the subjective beliefs of the police officers. *Princeton Community Phone Book, Inc. v. Bate*, 582 F.2d 706 (3d Cir. 1978), *cert. denied*, 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978). The depositions establish that the police officers took precautions initially to prevent trouble from occurring, responded to the call for assistance, prevented further fighting between Maynard and the bondsmen, and investigated at great length the bondsmen's authority to act as they did. The police officers believed that they had no choice but to let Kear and Mathusa leave with Maynard. This decision was based on conversations with the most knowledgeable persons available, Albenze and Taylor, and on a serious investigation of the incident. Plaintiffs offer only a conclusory allegation in an affidavit by Thomas Maynard to demonstrate the bad faith of the police officers. Maynard admitted that he has no personal knowledge of the interaction between the bondsmen and the police officers which occurred before the bondsmen arrived at his apartment or after he was taken to the police station. Thomas Maynard deposition, pp. 19, 32–33. In the face of the consistent and more probative depositions based on personal knowledge offered by the police officers, this lone conclusory allegation not based on personal knowledge is insufficient to withstand summary judgment. *Bsharah v. Eltra Corp.*, 394 F.2d 502 (6th Cir. 1968). Therefore, King, Taylor and Brow are immune from plaintiffs' claim and summary judgment is appropriate.

### D. Bonding Agency and Bondsmen

#### 1) State Action

The above discussion has concluded that the bondsmen did not act in concert with, or pursuant to an agreement with, the city prosecutor or city police officers. Therefore, no state action can be attributed to the bondsmen from the limited involvement of the prosecutor and police officers. *Adickes v. S. H. Kress & Co., supra.*

The fact that Kear and Mathusa possessed a State of Virginia bench warrant for Thomas Maynard and acted or purported to act pursuant to the authority of the bench warrant in seizing Maynard is sufficient to constitute the required state action. *Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964); *Smith v. Rosenbaum*, 333 F.Supp. 35 (E.D.Pa.1971), aff'd, 460 F.2d 1019 (3d Cir. 1972); *United States v. Trunko*, 189 F.Supp. 559 (E.D.Ark. 1960). Kear had in his possession the bench warrant issued by a Virginia state court. King deposition, p. 38; Broderick Bonding Agency answers to interrogatories, September 15, 1978, answers 18 and 20. Though Kear never showed the warrant to Maynard, (Thomas Maynard affidavit, par. 7), Kear did show the warrant to the police officers before the seizure of Maynard (King deposition, p. 12; Brow deposition, p. 8), during the police investigation at the apartment (Thomas Maynard deposition, p. 19), and at the police station after seizure (Brow deposition, p. 16). Throughout the incident, the bondsmen acted or purported to be acting under the authority of the state bench warrant. That such conduct constitutes state action is made clear by the United States Supreme Court:

> If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular state action which he took was not authorized by state law.

*Griffin v. Maryland, supra* at 135, 84 S.Ct. at 1773.

In *Griffin*, the Supreme Court found the Fourteenth Amendment to be violated by an employee of an amusement park, acting under the color of his authority as a deputy sheriff, who ordered a black man to leave the park because of his race. In *Smith v. Rosenbaum, supra*, state action was found when bondsmen acted pursuant to a bail piece obtained in a *pro forma* manner from a court clerk. In *United States v. Trunko*,

*supra,* state action was found where a special deputy sheriff flashed his badge and a bench warrant upon seizing a person who had jumped bond. Other cases concerning recapture by bondsmen which have dismissed the Section 1983 claims for lack of state action are distinguishable by the fact that the bondsmen did not act or purport to act, under authority of a state bench warrant. *Ouzts v. Maryland National Life Ins. Co.,* 505 F.2d 547 (9th Cir. 1975) (en banc), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975); *Easley v. Blossom,* 394 F.Supp. 343 (S.D.Fla.1975); *Thomas v. Miller,* 282 F.Supp. 571 (E.D.Tenn.1968); *Curtis v. Peerless Ins. Co.,* 299 F.Supp. 429 (D.Minn.1969).

That the issuance of the Virginia bench warrant constitutes state action becomes more clear when placed in the context of Virginia Code Annotated Section 19.1–144 (1960), which provides:

> A surety in a recognizance may at any time arrest his principal and surrender him to the court before which the recognizance was taken or before which such principal's appearance is required, or to the sheriff, sergeant, or jailor of the county or city, wherein the court before which such principal's appearance is required is located in addition to the above authority, upon the application of the surety, the court, . . . shall issue a capias for the arrest of such principal, and such capias may be executed by such surety, or his authorized agent, . . . and the person executing such capias shall deliver such principal and such capias . . . to the sergeant or jailor of the city in which the appearance of such principal is required, and thereupon the said surety shall be discharged from liability . . . . .

By this statute, the State of Virginia lends its authority to private bondsmen who arrest persons pursuant to a bench warrant who have failed to appear in court, thereby transmuting the private action of bondsmen into state action. Because the bondsmen possessed a state bench warrant in this case, the more difficult questions of whether the state regulation of bondsmen in itself is sufficient to find state action and whether bondsmen fulfill a public function need not be addressed.

In conclusion, by knowingly and purportedly acting under the authority of a state bench warrant, defendants Kear, Mathusa, and Broderick Bonding Agency were acting under the color of state law as required by Section 1983, the Fourth Amendment and the Fourteenth Amendment.

## 2) Deprivation of a Fourth Amendment Right

Determining the bounds of Fourth Amendment rights in the context of a rearrest by a bondsman is a substantial question not explicitly addressed by prior case law. In *Griffin v. Maryland, supra,* the constitutional violation was a deprivation of equal protection under the laws. *United States v. Trunko, supra,* concerned a criminal indictment under 18 U.S.C. Sec. 242, which was dismissed for reasons of the strict standards for defining a crime. In *Smith v. Rosenbaum, supra,* the Court found no deprivation of a constitutional right. Therefore, though these cases establish the presence of state action in the case at bar, they do not indicate the extent, if any, of Fourth Amendment protections.

The nature of the bail relationship between bondsman and principal must be examined first. The bondsman, in exchange for a fee and according to a contract,[1] provides a service, obtaining the principal's release from imprisonment. To obtain the principal's release, the bondsman must pledge to a court that the bondsman will assume responsibility for securing the appearance of the accused at trial. The bondsman thus owes a duty to the court and must suffer financial penalty for failure to perform that duty. In order to secure the principal's appearance at future court proceedings, the bondsman has the right pursuant to the bail contract or com-

1. The bail contract between Broderick Bonding Agency and Thomas Maynard is not before the Court as part of the pleadings or discovery products.

mon law to arrest the principal at any time and at any place and to redeliver the principal into the hands of the public jailor. *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *United States v. Field,* 193 F.2d 92 (2d Cir. 1951), *cert. denied,* 342 U.S. 894, 72 S.Ct. 202, 96 L.Ed. 670 (1951). In making the rearrest, the bondsman need not obtain a warrant, can use agents, can use force, if necessary, and can pursue the principal into any state and bring him back for trial without obtaining extradition, unless there is a contrary state statute. *United States v. Goodwin,* 440 F.2d 1152 (3d Cir. 1971); *Fitzpatrick v. Williams,* 46 F.2d 40 (5th Cir. 1931). In sum, the bondsman merely continues the original imprisonment, albeit in a more comfortable condition for the principal.

The common law right of recapture is well settled. In 1872, the United States Supreme Court stated in oft-quoted language:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner.

*Taylor v. Tainter,* 83 U.S. 366, 371, 21 L.Ed. 287 (1872).

■ The seemingly absolute powers granted to bondsmen at common law are not without restriction and must be interpreted in light of modern common law and constitutional principles. *See Brown v. Fogel,* 387 F.2d 692 (4th Cir. 1967).

■ The limits on the means of recapture are also well recognized, but have not been so explicitly stated as the right of recapture itself. *Taylor v. Tainter, supra,* states that the bondsman may break and enter a dwelling only "if necessary" to execute the rearrest. The comparison in *Taylor* of the right to recapture with the rearrest of an escaping prisoner by a sheriff also indicates that the bondsman is limited to the use of only necessary and reasonable force. *See People v. Rosales,* 68 Cal.2d 299, 437 P.2d 489, 66 Cal.Rptr. 1 (1968). Numerous lower courts have stated in dicta that a bondsman must stay within the bounds of the reasonable means needed to effect the recapture. *Smith v. Rosenbaum, supra; Curtis v. Peerless Ins. Co., supra; United States v. Trunko, supra.* It is established that a bondsman may answer in civil damages for actions unauthorized by law. *McCaleb v. Peerless Ins. Co.,* 250 F.Supp. 512 (D.Neb.1965); *Read v. Case,* 4 Conn. 166 (1822). Therefore, the common law right of recapture is limited by the reasonable means necessary to effect the rearrest.

■ The common law right of recapture, often set forth in the bail contract, also is circumscribed by the Fourth Amendment, when the bondsman acts under the cloak of state authority. *United States v. Holmes,* 452 F.2d 249 (7th Cir. 1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479, and 407 U.S. 909, 92 S.Ct. 2433, 32 L.Ed.2d 683, *reh. denied* 409 U.S. 1002, 93 S.Ct. 305, 34 L.Ed.2d 264 (1972). Many Fourth Amendment rights are potentially relevant, such as the need to state authority and purpose before forcing entry, *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), and the proscription against exerting more than reasonable or necessary force in making an arrest. *Costello v. United States,* 298 F.2d 99 (9th Cir. 1962); *Moore v. Bishop,* 338 F.Supp. 513 (E.D.Tenn.1972); *Skinner v. Brooks,* 74 Ohio App. 288, 58 N.E.2d 697 (Hamilton County Ct.App.1944). Considering the long line of precedent, however, the Court is not prepared to hold that a bondsman must obtain a warrant before rearresting his principal. *But see United States v. Holmes, supra.* In all other re-

spects, the Fourth Amendment applies in full force to the bondsman's right and effectuation of rearrest when the bondsman is acting under color of state law.

 In light of the Fourth Amendment protections for the plaintiffs, several material questions of fact exist for trial. Among others, did Kear and Mathusa properly demand entry to Maynard's apartment and identify themselves, their authority, and their purpose. Second, did Maynard refuse entry before Kear and Mathusa broke open the door of Maynard's apartment. Third, was it necessary and reasonable to break open the door of Maynard's apartment. Fourth, did Maynard physically resist the rearrest. Fifth, did Kear and Mathusa use more than the reasonable and necessary amount of force in rearresting Maynard, especially given that Maynard was on bond for a misdemeanor traffic citation. Because plaintiffs and defendants differ on the facts relevant to answering these questions, summary judgment cannot be granted.

Though plaintiffs' claim pursuant to the Fourteenth Amendment is not clearly stated, it is not totally frivolous and should not be dismissed at this stage of the proceedings. *See United States v. Trunko, supra.* Nor is summary judgment appropriate, because of the disputed material questions of fact discussed above.

## II. Eighth Amendment Claim

Plaintiff Thomas Maynard claims that the police officers failed to provide medical treatment despite his allegedly obvious bloody appearance.[2] The depositions of plaintiffs and defendants are contradictory on Maynard's need for medical attention. Nevertheless, summary judgment is appropriate, because plaintiff has not stated a claim for relief under the Eighth Amendment. Assuming, without deciding, that the Eighth Amendment protections do apply for Maynard when kept handcuffed in Kear's car outside the police station, Maynard's complaint fails as a matter of law to state a claim rising to constitutional dimensions.

It is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim is presented. (M)uch more is required than an allegation of tortious conduct. Many cases describe the necessary additive as "exceptional circumstances." . . . Such conduct was characterized . . . as so grossly incompetent, inadequate or excessive "as to shock the general conscience or to be intolerable to fundamental fairness."

*Gittlemacker v. Prasse,* 428 F.2d 1 (3d Cir. 1970). *See also Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Maynard's injuries were minor, as shown by the fact that he saw no doctor with respect to these injuries. Thomas Maynard deposition, pp. 28–31. Maynard was provided clothing to wear at the police station. Plaintiff has not alleged any gross mistreatment. In fact, Maynard's primary complaint of mistreatment is that after the police allowed Kear and Mathusa to keep him in their custody, he was forced to sleep on a hotel floor with his hands handcuffed. Thomas Maynard deposition, pp. 50–51. This alleged mistreatment was not caused by the police officers, but by Kear and Mathusa. Therefore, the pleadings and discovery materials establish that the police officers did not violate any Eighth Amendment right of Maynard and summary judgment is warranted.

 Assuming, without deciding, that the Eighth Amendment protections extend to Maynard while in the custody of Kear and Mathusa, the alleged mistreatment, even if true, does not rise to the constitutional dimensions of cruel and unusual punishment. Therefore, summary judgment is granted to defendants Kear, Mathusa, and Broderick Bonding Agency on plaintiff's claim pursuant to the Eighth Amendment.

## III. Sixth Amendment

 It is evident from the pleadings that plaintiff has not stated a claim under

---

**2.** The pertinent facts are described above on page 799, *supra.*

the Sixth Amendment against any defendant. Plaintiff's Sixth Amendment claim is based on the erroneous premise that the bondsmen could not take Thomas Maynard out of the State of Ohio without an extradition proceeding. It is well established that a bondsman may pursue his principal across state lines and recapture the principal pursuant to the common law right of recapture, by which no extradition is required. *Fitzpatrick v. Williams, supra. See Taylor v. Tainter, supra.* Therefore, summary judgment is granted for all defendants with respect to plaintiffs' Sixth Amendment claim.

### IV. Section 1985 and 1986 Claims

To demonstrate a claim pursuant to Sections 1985 and 1986, plaintiffs must establish that the defendants acted on the basis of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The pleadings and discovery products are entirely devoid of any trace of a racial or other discriminatory motivation on the part of any defendant. In fact, the race or class of the plaintiffs is never alleged. Therefore, all defendants are granted summary judgment with respect to plaintiffs' claims under Sections 1985 and 1986.

### V. Pendent State Claims

All pendent state law claims against defendants City of North Olmsted, Albenze, King, Taylor, and Brow are dismissed, because no federal constitutional or statutory claims remain against these defendants. *Arnson v. General Motors Corp.,* 377 F.Supp. 209 (N.D.Ohio 1974). The pendent state law claims against defendants Kear, Mathusa, and Broderick Bonding Agency will be heard on the merits along with the remaining federal constitutional and statutory claims, because they involve a common nucleus of facts and ordinarily would be expected to be tried in a single proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### ORDER

1. Summary judgment is granted for:

a) City of North Olmsted, Donald Albenze, Russ King, Jr., Marion Taylor and Raymond A. Brow, on the claims pursuant to 42 U.S.C. 1983, Fourth Amendment and Fourteenth Amendment;

b) all defendants on the claim pursuant to the Eighth Amendment.

c) all defendants on the claims pursuant to the Sixth Amendment and 42 U.S.C. 1985 and 1986.

2. Summary judgment is denied for Daniel Kear, Jesse Mathusa, and Broderick Bonding Agency on the claims pursuant to 42 U.S.C. 1983, Fourth Amendment and Fourteenth Amendment.

3. All pendent state claims against the City of North Olmsted, Donald Albenze, Russ King, Jr., Marion Taylor and Raymond A. Brow are dismissed.

4. All pendent state law claims against Daniel Kear, Jesse Mathusa and Broderick Bonding Agency are not dismissed.