Dear Mr. Millet:
Your request for an opinion of this office has been forwarded to the undersigned for research and reply. As I understand them, your questions are as follows:
 Does a bondsman have authority to come into a parish and make an arrest or take into custody their principal?
 Do they have authority to pull weapons when trying to take someone into custody?
 Do bondsmen have the authority to break into a home to secure someone who failed to honor a bonding agreement with a bonding agency?
 Does the sheriff, the chief law enforcement officer in the parish, have the authority to have the bonding agent report to his office when they come into the parish to take someone into custody?
In reference to your first and third questions, I have enclosed a copy of a previous Attorney General Opinion No. 91-132 that answered the same or similar questions you had regarding the powers a bondsman has as a surety for a defendant. However, you must note that since this previous opinion, there have been changes made to the referenced statutes. More particularly, La.C.Cr.P. art. 340, which states that a surety or bondsman has the authority to make an arrest for the purpose of surrendering the defendant, is now referenced as La.C.Cr.P. art. 345. Additionally, in addressing the question of whether a bondsman may break into his principal's home for the purpose of arresting him, this previous opinion states that a bondsman may use reasonable force to break into and enter the principal's dwelling, for the sole purpose of an arrest, if he is believed to be inside, and the principal has wrongfully refused admittance.
To answer your second question please refer to Attorney General Opinion 81-253, a copy of which is also enclosed, which states that bondsmen are allowed to carry weapons that are not concealed. However bondsmen may attain authorization from the Department of Public Safety in limited circumstances to carry concealed weapons. Furthermore, the opinion refers to La.C.Cr.P. art. 220, which allows any citizen, while making a lawful arrest, to use reasonable force to effect the arrest and detention.
Finally, it is also our opinion that there is no law in Louisiana which gives a sheriff the authority to require bondsmen to report their presence in the parish for the purpose of arresting a defendant. However, La.C.Cr.P. art. 228 does impose a duty on any "peace officer" to promptly conduct the arrested defendant to the nearest jail or police station and cause him to be booked. While bondsmen have not been considered "peace officers" in Louisiana, it is our opinion that a bondsman does have a duty to promptly transport the arrested defendant to the nearest jail within the parish the arrest took place.
I hope that this opinion has satisfactorily answered your questions. Please call us should you require any further assistance. With warmest regards, I remain
Very Truly Yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ ROBERT J. HILDUM Assistant Attorney General
OPINION NUMBER 91-132
May 28, 1991
BONDS SURETY 8 CRIMINAL PROCEDURE 16-A ARRESTS 5
A bondsman does not need an arrest warrant to apprehend his principal. A bondsman may also forcibly enter his principal's residence, but only if necessary and provided that the bondsman uses reasonable force, announces his identity and purpose, and has been wrongfully refused admittance. There is no authority supporting the bondsman's forcible entry of a third-person's residence absent prior judicial approval. La.C.Cr.P. art 340
J.W. Jones Assistant Chief Caddo Parish Sheriff's Office 501 Texas Street Room 101 Shreveport, La. 71101-5410
Dear Assistant Chief Jones:
Your request for an opinion of this office has been forwarded to the undersigned for research and reply. As I understand them, your questions are as follows:
(1) Does a bondsman need a warrant when he arrests a principal who jumped bail by failing to appear in court?
(2) May the bondsman apprehend his principal by forcibly entering the principal's home without his consent and without a search warrant?
(3) May the bondsman apprehend his principal by forcibly entering the residence of a third person without that person's consent and without a search warrant?
La.C.Cr.P. art. 340 (West 1991), which grants a surety or bondsman the authority to arrest his principal, provides:
For the purposes of surrendering the defendant, the surety may arrest him. The surety shall be liable, however, for all damages caused by the negligent manner or means used by him or his agents and employees in apprehending and arresting the defendant, whether the damage is to the defendant or to a third person. In addition, the surety's agents or employees apprehending the defendant shall be liable for all damages caused by the negligent manner or means used by them in apprehending and arresting the defendant, whether the damage is to the defendant or to a third party.
Clearly, under art. 340 a surety or bondsman has the power to arrest his principal. The question then becomes whether the surety must first obtain an arrest warrant. In addressing this question, the Official Revision Comment to art. 340 cites State v. Cunningham, 10 La.App. 393
(1855), where the Louisiana Supreme Court said:
. . . [t]he better opinion is that a warrant was unnecessary to protect the bail in arresting his principal. [Citations omitted]. In the latter case, the court said that the power of bail to arrest and render the principal, does not depend upon any process, but results from the nature of the undertaking of bail.
More than a century ago, the United States Supreme Court in Taylor v. Taintor, 83 U.S. (16 Wall) 366, 371 (1872), stated in dicta that an arrest warrant was unnecessary for a bondsman to apprehend his principal because the surety's custody over his principal was a continuation of the original incarceration. The Court stated:
When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner.
Taylor reflects the broad powers granted to a bondsman at common law to effectuate the surrender of his principal. In other decisions, courts have commented that a bondsman's authority to apprehend his principal may be even more expansive than a police officer's arrest authority. In Carlson v. Landon, 72 S.Ct. 525 (1951), the United States Supreme Court said:
When a prisoner is out on bond he is still under court control, though the bounds of his confinement are enlarged. His bondsmen are his jailers. While the bailsmen may arrest without warrant, the court proceeds under bench warrant to retake a prisoner.
The bondsman's authority to arrest his principal appears to be based upon the law of contract as opposed to criminal law. The Fifth Circuit of the United States Court of Appeals in Fitzpatrick v. Williams, 46 F.2d 40
(5th Cir. 1931) stated:
[T]he right of the surety to recapture his principal is not a matter of criminal procedure, but arises from the private undertaking implied in the furnishing of the bond.
The view that the bondsman-principal relationship is based upon contract law and not criminal law is an important distinction. Because a contract is private, there is no "state action" performed by the bondsman in arresting the principal and hence, the bondsman is not bound by traditional constitutional requirements. The arrest, however, must be pursuant to the terms of the contract. However, even though not a state actor, a bondsman may still incur personal liability for his actions, either by facing criminal charges or being sued in a civil action. Additionally, once a bondsman does act pursuant to a bench warrant or other court order, he may then be considered a state actor, and different standards would apply. [See Maynard v. Kear 474 F. Supp. 794 (N.D.Ohio, 1979), holding that a bondsman acting pursuant to a bench warrant may be held to be a state actor under 42 U.S.C. § 1983.]
The Criminal Code does offer some general guidance for answering what appears to be difficult and yet unanswered questions. La.C.Cr.P. art. 3
provides that when a court is faced without an applicable criminal procedure, it "may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions." Therefore, this opinion will attempt to follow the "spirit" of Louisiana's arrest law to identify what procedural mechanisms are advisable before a bondsman apprehends his principal based upon their contractual relationship.
A review of Louisiana's law of arrest may be helpful in answering your questions. La.C.Cr.P. art. 227 does address the authority of a "person" to rearrest a prisoner after he has escaped from custody following a lawful arrest. It provides:
If a person lawfully arrested escapes or is rescued, the person from whose custody he escaped or was rescued may pursue and retake him immediately without a warrant at any time and in any place within the state. He may use the same means to retake as are authorized for an arrest.
Based upon art. 3, art. 340, and the analogy that a bondsman apprehending his principal is similar to a sheriff apprehending an escaped prisoner, then under art. 227 a bondsman would have legal authority by which to immediately pursue and retake his principal without a warrant. A caveat is that the person must be in the bondsman's lawful custody and that the arrest itself must be legal.[1] Additionally, there is an element of exigency built into art. 227 by the use of the term "immediately."
Although Louisiana's statutory law does not directly address the issue of whether a bondsman needs a warrant prior to apprehending his principal, this office is of the opinion that based upon the Official Revision Comment to art. 340, the dicta in Taylor and Cunningham, supra, and art. 227, the bondsman does not. However, a cautious approach would be for the bondsman or his agent to have a certified copy of the original bonding contract in his possession at the time of apprehending his principal. This legal process would serve as notice to the principal of the bondsman's authority to effectuate the arrest.
Regarding your second question of whether a bondsman may forcibly enter his principal's house without consent and without a search warrant, Taylor states the common law as authority for allowing a bondsman, if necessary, to break and enter the principal's dwelling for purposes of rearrest. The United States District Court for the Northern District of Ohio in Maynard, supra, stated that "the comparison in Taylor of the right to recapture with the rearrest of an escaping prisoner by a sheriff also indicates that the bondsman is limited to the use of only necessary and reasonable force." Therefore, a bondsman's authority to arrest his principal under federal jurisprudence and the common law is limited to the use of only reasonable force and only when necessary to effectuate the rearrest.
As with the arrest warrant requirement, Louisiana positive law is again silent as to a bondsman's authority to apprehend his principal by forcibly entering the principal " s house.
Because a bondsman has the authority to arrest, this office is of the opinion that the bondsman should thereby conduct the arrest as is otherwise required by Louisiana law.[2]
La.C.Cr.P. art. 220 requires that a "person" making an arrest must use reasonable force. Therefore, a bondsman, as a person authorized to arrest another, would be bound by art. 220 to use reasonable force. Additionally, art. 340 implies that reasonable force can be used since it makes a bondsman or his agent liable only for damages to the principal or a third party caused by negligence. Moreover, La.C.Cr.P. art. 224 further provides that:
. . . to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any . . . dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance.
Art. 224 specifically refers to a "peace officer" and not a "person" and therefore could arguably exclude a bondsman. However, based upon the Supreme Court dicta in Taylor, a bondsman at common law does appear to have limited authority to use reasonable force if necessary to effectuate the recapture of his principal.
Therefore, this office is of the opinion that based upon Taylor and not any particular provision of Louisiana law, the answer to your second question is a qualified yes. A bondsman may, if necessary, use reasonable force to break and enter a principal's dwelling for the sole purpose of rearrest if the principal is reasonably believed to be inside, and the principal has wrongfully refused to admit the bondsman. However, a bondsman, in effectuating a lawful arrest pursuant to the terms of the contract, should follow all other provisions of Louisiana law regarding a lawful arrest. The bondsman should first announce his authority and purpose, and request admittance. Only if admittance is denied should a bondsman then be allowed to use reasonable force if necessary to enter a principal's home if the bondsman reasonably believed that the principal was inside. A safe course of action would be for the bonding agreement to include a provision that the bondsman may, if necessary, use reasonable force to recapture the principal, based upon criteria as outlined above.
Your final question is whether a bondsman needs either consent or a search warrant prior to entering the home of a third person in an attempt to apprehend his principal. There is no case law, either from Louisiana courts or the United States Supreme Court, on whether a bondsman may enter a third party's dwelling without permission. Taylor, while recognizing the bondsman's authority to enter his principal's dwelling without permission, neither supports nor rejects the proposition that a bondsman may enter the residence of a third party.
Just this month, a Court of Appeals in Minnesota addressed this issue and held that a bail bondsman does not have authority to forcibly enter the private dwelling of a third person to arrest his principal. In State v. Tapia, ___ N.W.2d ___, 1991 WL 54618 (Minn.App. 1991), the Court held that the bondsman had no authority to enter a third person's home even though the bondsman had seen his principal enter another person's apartment. The facts in Tapia are rather extreme. Apparently, the bondsman, armed with a loaded shotgun, had broken a chain on the apartment door when he was denied entry to apprehend his principal, who had failed to appear in court on a misdemeanor charge. The apartment belonged to the principal's best friend, whose name had been listed in the bonding agreement. Because Minnesota statutory law, like Louisiana's, is silent on this issue, the Tapia court reasoned that a bondsman had at least the same authority as a private citizen. However, Minnesota law, unlike Louisiana law, is more expansive and allows a private citizen to enter a dwelling in making an arrest when a felony has been committed, the suspected felon is in the dwelling and the suspect is informed of the person's intent to arrest him. In Louisiana, a private citizen is limited to arresting someone for a felony committed in or out of his presence; the statute, however, does not authorize entry into the suspected felon's dwelling for purposes of making the arrest. The Minnesota court clearly rejected that the contractual authority between a bondsman and his principal allowed that bondsman to enter the house of a person who was not a party to the contract. Additionally, the Minnesota court may have reached a different conclusion if the underlying offense had been a felony as opposed to Z misdemeanor.
An older Alabama decision directly contradicts the Minnesota decision. Livingston v. Browder, 285 So.2d 923 (Ala.Civ.App. 1973) held that a bondsman does have authority to enter another's residence to apprehend his principal. Here, a bondsman entered the house of the principal's mother without permission and arrested the principal. However, the court conditioned this right upon the bondsman having just cause to believe the principal is inside the dwelling, properly identifying himself, and using reasonable means to gain entry. The decision was also based on Alabama law, which gave the surety the right to pursue his principal any place in the state and arrest him, upon the surety obtaining a certified copy of the bond.
La.C.Cr.P. art. 340 is again silent about the authority of a surety to apprehend his principal by entering a third party's dwelling without permission and without a search warrant. The statute does, however, make a surety or his agent accountable to the principal or a third party in civil damages for the negligent manner or means used in apprehending and arresting the principal. Art. 340's inclusion of third persons could arguably imply that a bondsman may have Z right to enter a third party's home to arrest his principal. However, any implication under art. 340 becomes even more tenuous if it is Cited as authority for the bondsman to enter a third party's home without consent and without a warrant.
If a bondsman clearly was a state actor in entering a third party's dwelling, a recent U.S. Supreme Court decision would seem to impose a warrant requirement on the bondsman before being allowed entry. [Cf. Steagald v. United States, 101 S.Ct. 1642 (1981), holding that absent exigent circumstances, a search warrant is necessary before entering the home of a third party to arrest a fugitive.] When there is no state action, the question of whether the entry still requires prior judicial approval remains open.
Your final question raises two conflicting state interests. There is the state interest of assuring the appearance of the accused for judicial proceedings. On the other hand, granting a bondsman the authority to enter a third party's home without consent and without a warrant conflicts directly with the policy of preserving the sanctity of one's house by preventing unreasonable searches. Additionally, there is a further potential danger that a violent confrontation may result should the bondsman have this authority. The question then becomes which policy should prevail when there is a direct conflict. Moreover, in addition to the federal constitution, La. Const. art. 1 § 5 adamantly protects a citizen's right to be secure against unreasonable "invasions of privacy" as well as unreasonable searches and seizures, and has been applied in both criminal and civil contexts.
The recent trend in United States Supreme Court decisions is toward protecting homeowners from unreasonable intrusions. Historically speaking, since the days of the Revolutionary War, the sanctity of a man's home has been vigorously protected. Furthermore, even considering such decisions as Livingston, although allowing a bondsman to enter another's house, the right of entry is conditioned upon certain criteria, which clearly indicates that the bondsman's authority in rearresting his principal is limited.
Thus, while Louisiana and United States Supreme Court authorities are silent on this issue, this office is of the opinion that a bondsman should seek prior judicial approval before entering a third party's dwelling without permission.
In conclusion, a bondsman does not need a warrant to arrest his principal; the legal process is the original bonding agreement itself. Additionally, the bondsman may want to carry with him a certified copy of the bonding agreement, to be shown to the principal at the time of his arrest. Second, the bondsman may also use reasonable force in entering his principal's residence, if necessary, provided he has legal authority to effectuate the arrest, has announced his identity and purpose, and has been wrongfully refused admittance. Finally, based on policy reasons, and not Louisiana or United States Supreme Court authority, a bondsman should get prior judicial approval before entering a third party's dwelling without permission to arrest his principal.
It is hoped that this information sufficiently answers your questions. If you have any further questions, or if we can provide you with additional information, please do not hesitate to call. We would also like to thank you for your patience in awaiting our response to your opinion request.
With kind regards, I am
 William J. Guste, Jr. Attorney General
 By: Kathleen E. Petersen Asst. Attorney General
[1] Louisiana law clearly recognizes a citizen's right to resist an unlawful arrest, but only by using such force as in necessary under the circumstances. See White v. Morris, 345 So.2d 461 (La. 1977); State v. Lindsay, 388 So.2d 781 (La. 1980) 
[2]. While articles of the Criminal Code pertaining to the arrest of individuals by peace officers may not be legally binding upon bondsman, there is no doubt they do establish a reasonable standard by which one's actions could be judged. Additionally, Louisiana law generally provides that peace officers have exclusive authority to execute arrest warrants. The Official Revision Comment (a) to La.C.Cr.P. art. 204 provides that a peace officer "in its commonly accepted sense generally includes sheriffs, deputies, constables, marshals, city police, and other officers who enforce public peace." Based upon art. 204 and the Official Revision Comment, one could argue that a bondsman has no legal authority by which to execute an arrest warrant. The bondsman, however, would have more authority than any other citizen based upon art. 340. Additionally, the authority of a private Louisiana citizen to arrest an individual is as follows: 1.) when a felony is committed in or out of his presence, or 2.) when requested by a peace officer to assist in making an arrest. (See respectively La.C.Cr.P. arts. 214 and 219.) Art. 214 may be applicable to a bondsman if the underlying offense is a felony. Art. 219 appears to be inapplicable to any question you have posed. 
OPINION NUMBER 81-253
March 11, 1981
5 — ARREST 8 — BAIL — SURETY
By private person; duties and powers. (1.) Bail bondsmen may arrest a fugitive in Louisiana when he is surety for that fugitive, he cannot authorize private citizen to arrest such a fugitive; (2.) Person so arrested should be booked into nearest jail in parish where arrested, otherwise bail bondsman, for violating his booking procedure, could be subject to contempt charges or obstruction of court order; (3.) Bail bondsmen are not peace officers, however they must comply with bondsmen are not peace officers, however, they must comply with the extradition laws and statutes on the use of force, weapons, etc. Art. v. § 2, La. Constitution; Art. I, § 11, La. Constitution R.S. 14:95; 14:95.1;14:133.1 C.Cr.P. Articles: 12, 20, 25, 207, 214, 219, 220, 224, 226, 228, 265, 266, 269, 270, 338 and 340.
Honorable Salvador J. Lentini Chief of Police City of Kenner 1801 Williams Boulevard Kenner, Louisiana 70062
Dear Chief Lentini:
In response to your letter of February 12, 1981, I enclose herewith a copy of a previous Attorney General Opinion No. 75-1309, that answered the same or similar questions you had regarding the authority for arrest of defendants! principals by their bondsmen/sureties.
Your remaining unanswered questions, as I understand them, are as follows:
 1. If the surety does not bock his principal at the nearest jail (as required under previous Attorney General Opinion No. 75-1309), may the surety Z arrested for kidnapping?
 2. Can a bondsman arrest a subject in Louisiana for a bond posted in another state? If so, is extradition necessary?
3. Does a bondsman have a right to bear arms to effect an arrest?
 4. What force is allowed to effect the arrest?
Since bondsmen have the statutory authority to arrest their principals for the purpose of surrender (Art. 340 La.C.Cr.P. and Attorney General Opinion No. 75-1309), a corresponding duty to make a proper surrender after arrest exists. Article 338 of the Louisiana Code of Criminal Procedure provides in pertinent part "a surety may surrender the defendant . . ., to the officer charged with hi detention, . . ." (Emphasis added). The official comments following this article states that "the official to whom the surrender must be made is the officer to whose custody the defendant was or would have been committed.' However, from a reading of Articles 228 and 207 of LSA-C.Cr.P. "peace officers' have a duty to book the person arrested at the nearest jail or police station.
In view of Attorney General Opinion No. 75-1309, a resolution of the above apparent conflict has been to impliedly define the phrase "office charged with his detention' as the officer who would have received the arrestee for regular booking after arrest by a peace officer. This should not be construed as including bondsmen within the definition of peace officers.
By analogy to the situation of a peace officer failing to book his prisoner promptly at the nearest jail, one can arguably determine the penalties for such conduct on the part of bondsmen. The official comments to LSA-C.Cr.P. Article 228 indicates that a violation of the booking procedures by peace officers would constitute malfeasance in office under La.R.S. 14:134. However, since bondsmen are not "peace officers or public officials' per se, they could not be charged with malfeasance. They may however be subject to contempt proceedings or obstruction of court orders, depending upon the circumstances and seriousness o the misconduct complained of for failing to properly surrender their principals Rf: La. Const. of 1974 Art. V. Section 2; LSA-C.Cr.P. Art. 17, 20 to 25 and R.S.14:133.1 as amended.
Accordingly, given the surety's statutory power to arrest his principal for surrender purposes, an impropriety in the booking or surrender procedure would not constitute kidnapping. This conclusion is reached based upon the aforementioned analogy and upon the assumption that there is a surrender of some type. The situation of no surrender at all could, for sake of argument, cause one to consider such a flagrant violation as either kidnapping or false imprisonment, dependent upon the circumstances of each case.
Relative to out of state bondsmen's power to arrest a fugitive in Louisiana, kindly refer to LSA-C.Cr.P. Articles 340, 214, 219, 265, 266
and 270.
A reading of Article 340 of the C.Cr.P. indicates that for purposes of surrending him, the surety may arrest him. This has been interpreted to mean that the principal may be arrested by his own surety for jumping bail. See Attorney General Opinion No. 75-1309. Note here also that Article 214 of the C.Cr.P. allows for arrest of a felon by a private person and Article 219 provides for arrest by a private person while assisting a peace officer. While not specifically granting any general power of arrest upon out of state bondsmen, these articles would indicate limited powers of arrest in specified situations.
But these articles should also be read in conjunction with LSA-C.Cr.P. Articles 265, 266 and 270 that further limit the powers of arrest in extradition: cases. Articles 265 directs "peace officers' to execute the governor's warrant of arrest against a fugitive for extradition purposes. Article 266 authorizes any peace officer to arrest the accused in the state with the aid of other peace officers or persons in the execution of the governor's warrant (Emphasis added) Article 269 empowers a judge with criminal jurisdiction to issue a fugitive arrest warrant "when on the oath or affidavit of a credible person, . . . the person to be arrested is charged with: (1.) Being a fugitive from justice of another state; (2.) Commission of a crime in another state; or (3.) Having been convicted . . . in another state, and having escaped from confinement or having broken the terms of his bail . . ." (Emphasis added). Accordingly, while out of state bondsmen may under limited circumstances arrest their principals, our code would require compliance with extradition articles noted above in the same manner as done by peace officers. The preferred method suggested by these codal articles would be for the bondsmen to request the assistance of a peace officer in getting warrants of arrest issued. However, assuming an NCIC wanted bulletin has been placed for a fugitive's arrest, the fugitive may be arrested by his surety/bondsman for breaking the terms of his bail undertaking. Rf: LSA-C.Cr.P. Articles 340 and 269 (3). Immediately after such an arrest, the bondsman should turn his principle over to the local jail/court for extradition proceedings.
It is also our opinion that while it is the constitutionally protected right of each citizen to keep and bear arms, there is no authority that would allow bondsmen in Louisiana to carry weapons concealed on their person. LSA — Constitution 1974 Article I, Section 11, R.S. 14:95
and 14:95.1. A bondsman going through the proper channels, who becomes specially commissioned by the Department of Public Safety or comparable law enforcement agency with such powers, may be authorized to carry concealed weapons for limited specified purposes. And then even when authorized to carry weapons, a bondsman could only use his weapon to make an arrest of his principal when he has sufficient reasons to believe his life or others are seriously threatened and in jeopardy at the time, and the use of deadly force is needed to counter deadly force.
We refer you to LSA-C.Cr.P. Articles 220, 224, 226, and 227 in answering what force is allowed the bondsman to effect an arrest of his principal.
Article 220 of the Louisiana Code of Criminal Procedure provides:
 . . . the person making lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.
Article 224 of the C.Cr.P. allows ". . . a peace officer, . . ." to make forcible entry into "any . . . structure . . ." in making an arrest.
Article 226 of the C.Cr.P. and the official comments thereunder, places a duty upon private persons making arrests to turn their prisoner and his effects over to a peace officer.
Article 227 of the C.Cr.P. provides for rearrest after the prisoner escapes by authorizing pursuit and rearrest at any time and in any place within the state.
Accordingly, a bondsman as a private person may use reasonable force in arresting his principal but may not make forcible entry into any dwelling, vehicle or other structure without the assistance of a peace officer.
We trust that your questions have been sufficiently answered by this opinion. Should you need further assistance, please feel free to contact this office.
Sincerely,
 William J. Guste, Jr. Attorney General
 BY: Ivan L. R. Lemelle Assistant Attorney General