STATE of Minnesota, Plaintiff,

v.

Jerry Wayne TAPIA, Defendant.

No. C1-90-1109.

Court of Appeals of Minnesota.

April 16, 1991.

Review Denied May 23, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson and Fred Karasov, Asst. County Attys., Minneapolis, for plaintiff.

John W. Zweber and Dennis Schertz, Roseville, for defendant.

Considered and decided by SHORT, P.J., and KALITOWSKI and POPOVICH,* JJ.

---

* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

## OPINION

KALITOWSKI, Judge.

Defendant Jerry Tapia, a bail bondsman, was charged with two counts of first degree burglary. The trial court denied defendant's motion to dismiss for lack of probable cause and certified as important and doubtful the question of whether a bail bondsman has authority to forcibly enter a third party residence in pursuit of his principal. We answer the question in the negative.

## FACTS

On May 10, 1989, defendant Jerry Wayne Tapia was called by Interstate Bonding Co. (Interstate) to apprehend Glora Clay who had failed to appear in court after being released on a bail bond issued by Interstate. At the time Interstate issued the bond, Clay had been charged with a misdemeanor offense of solicitation.

Gladys Foster, who had posted $580.00 to obtain the release of Clay, saw Clay enter an apartment building at 2809 Portland Avenue in Minneapolis. Foster called Interstate to relate her observance of Clay and Interstate dispatched Tapia to the scene.

Tapia allegedly approached the apartment building holding a loaded shotgun, and entered as someone left the building through the front security door. He knocked on the door of the apartment in which Clay had been observed, and identified himself as an agent of Interstate. Tapia then heard furniture being moved and voices saying "wait a minute" and "don't let him in" whereupon he turned the door knob and opened the door as far as the chain lock allowed.

After being denied entrance to the apartment, Tapia allegedly pushed his shoulder against the door, breaking the chain. He entered the apartment finding Mae Williams, the apartment tenant listed on the bond indemnification agreement as Clay's best friend, and Greg Polk. Tapia demanded that they tell him where he could find Clay. Williams and Polk did not respond. They claim that Tapia then pointed his shotgun at them and threatened to kill them. Tapia claims he made no such threats.

Tapia, visibly armed with the shotgun, quickly searched the apartment and ran through the other apartments in the building. He returned to the apartment where Williams and Polk were, and after allegedly questioning them for 20 minutes concerning Clay's whereabouts, he left the building, at which time police arrived.

Tapia was charged with first degree burglary. He moved to dismiss claiming privilege as a bail bondsman. The trial court denied the motion and certified the question to this court.

## ISSUE

May a bondsman or his agent forcibly enter a private third party residence, (i.e., not the residence of the principal) without consent, when the bondsman has reason to believe that his principal is in the residence and that he has a right to arrest the principal?

## ANALYSIS

The bondsman's authority to arrest and surrender the principal derives from three overlapping sources: (1) the common law principles enunciated by the Supreme Court in *Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1872); (2) statutory authorization; and (3) the contract between the surety and the principal.

The United States Supreme Court in *Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1872) defined a bondsman's common law arrest rights as follows:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter *his* house for that pur-

pose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest [sic], by the sheriff, of an escaping prisoner * * *. [I]t is said: "[t]he bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge."

*Id.* at 371–72 (emphasis added).

In addition to the common law rights enunciated in *Taylor*, Minn.Stat. § 629.63 also delineates surety arrest powers. However, neither *Taylor* nor Minn.Stat. § 629.63 specifically authorize a surety on bail bond to forcibly enter a third party dwelling without consent to arrest a fleeing principal. The *Taylor* court only specified that, if necessary, a surety may break and enter a *principal's* house to make arrest. *Taylor*, 83 U.S. at 371. Similarly, while Minn.Stat. § 629.63 gives the bondsman authority to arrest the principal, it does not address how the surety may effect such an arrest. *See* Minn.Stat. § 629.63.

A bail bondsman has at least the same authority a private citizen would have to make a citizen's arrest. However a private citizen can enter a dwelling to make an arrest only when a felony has been committed, and the *person committing the felony* is in the dwelling and is informed of the intent to make an arrest. *See* Minn.Stat. §§ 629.37, 629.38 (1985). Here, Tapia broke down the door of a third party dwelling to arrest a principal who jumped the bond on a misdemeanor charge. Neither the initial solicitation charge nor the subsequent act of jumping bond could have subjected Clay to felony criminal liability. *See* Minn.Stat. §§ 609.324, subds. 2 & 3 (1986), 609.49 (1989). Hence, Tapia, acting under the authority afforded a private citizen, could not lawfully break into a third party residence to arrest Clay.

At least one state has denied a bondsman the right to break and enter a dwelling of a third party to seize a principal located therein. *See State v. Lopez*, 105 N.M. 538, 734 P.2d 778 (1986), *cert. denied, Lopez v. New Mexico*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987) (bail bondsman is not absolved of criminal responsibility for armed, forcible entry of third party residence). Other states have also limited the authority of a bail bondsman to infringe upon third party rights. *See State v. Portnoy*, 43 Wash. App. 455, 718 P.2d 805 (1986), *review denied*, 106 Wash.2d 1013 (1986) (bondsman subject to criminal liability for using force against third party blocking his path of pursuit of principal); *Livingston v. Browder*, 51 Ala.App. 366, 285 So.2d 923 (1973) (bondsman may enter third party residence when he sees his principal in the dwelling, properly identifies himself, and acts in a reasonable manner to enter the dwelling and effectuate an arrest).

The contractual authority of a bondsman does not provide justification to infringe on third party rights. *See Portnoy*, 718 P.2d at 811. The surety-principal contract generally authorizes the bail bondsman, or his agent, to exercise jurisdiction and control over the principal during the period for which the bond is executed. However, this contractual authority does not include the authority to infringe upon the rights of persons who are not parties to the contract.

None of the sources from which a bail bondsman derives his authority—the common law, Minn.Stat. § 629.63, or the bail bondsman's contract—authorize the bondsman to forcibly enter the private dwelling of a third party to arrest the principal. Therefore, consistent with the decisions of other jurisdictions limiting the powers of a bail bondsman, we conclude that a bail bondsman does not have this authority.

## DECISION

The authority given to the bondsman to effectuate a principal's arrest does not extend to the forcible entry of a third party's residence.

Question answered in the negative.