DECISION AND JOURNAL ENTRY
Appellant-defendant Michael W. Kole appeals a judgment of the Lorain County Court of Common Pleas that convicted him of one count each of abduction, having a weapon while under a disability, and burglary, with a firearm specification. This Court affirms.
On May 23, 1995, Kole and a companion were working as bail bondsmen seeking fugitive Brandon Rodriguez. Kole and his companion went to a house at 4885 Elmwood in Sheffield Lake and confronted Rodriguez and his eighteen-year-old girlfriend Nicole Williams in the backyard. Rodriguez offered a false identity, and claimed he could prove that he was not Rodriguez. Rodriguez proceeded to the house, under the pretense of getting his identification. Thereafter, Rodriguez fled. Kole had his handgun drawn, and ordered Williams to stay in her chair. Kole and his companion handcuffed Williams and repeatedly asked her about the whereabouts of Rodriguez. Kole then ordered Williams to drive her car about the neighborhood in an unsuccessful effort to flush out Rodriguez.
On May 31, 1996, Kole and a companion were acting as bail bondsmen for ABC Bail Bonding charged with locating and apprehending fugitive Cecil Cobb. Kole was dispatched after his agency received an anonymous tip that Cobb was located at the apartment of Cobb's half brother William McAuliffe, located at 325 Columbus Street in Elyria. Approximately 3:00 p.m. Kole and his companion entered McAuliffe's apartment without consent. McAuliffe was awakened in his underwear to Kole and his companion pointing a handgun and shotgun respectively at him in close range. Kole and his companion screamed at McAuliffe demanding to know if he was Cobb. Upon McAuliffe's denials, Kole's companion searched the entire apartment. Thereafter, police began to arrive on the scene. Kole advised his companion that the "blue suits" had arrived. Kole took the shotgun from his companion, unloaded it and set it upon a chair. Once the police cleared Kole and his companion they all departed McAuliffe's residence. Later that night, Kole and his companion staked out McAuliffe's residence. Kole was able to apprehend the returning Cobb with a drawn handgun, and by handcuffing Cobb.
On October 8, 1996, Kole was indicted by the Lorain County Grand Jury in connection with the events that occurred in McAuliffe's apartment on one count of abduction, in violation of R.C. 2905.02(A); one count of having a weapon while under a disability, in violation of R.C. 2923.13(A)(2); and one count of burglary, in violation of R.C. 2911.12(A)(3). On January 29, 1997, Kole was indicted in connection with the events involving Willams on one count of abduction, and one count of having a weapon while under a disability. Each of the counts contained firearm specifications.
The two cases were consolidated and tried to a jury. Kole was found guilty of the charges arising from the May 31, 1996 incident at McAuliffe's apartment: one count of abduction, one count of having a weapon while under a disability, one count of burglary, and firearm specifications with each charge.
Kole timely appeals, asserting seven assignments of error. The state has timely cross-appealed asserting one assignment of error.
 First Assignment of Error THE TRIAL COURT ERRED IN JOINING APPELLANT'S TWO CASES FOR TRIAL.
 Kole argues that the trial court erred by joining his two separate indictments into one trial. This Court disagrees.
Crim.R. 8(A) permits joinder of offenses where the charged offenses are "based on the same act or transaction, * * * or are part of a course of criminal conduct." Joinder of offenses is favored because it conserves judicial resources by avoiding the duplication of multiple trials and minimizes the prospect of inconsistent results in separate trials before different juries.State v. Franklin (1991), 62 Ohio St.3d 118, 122, certiorari
denied (1992), 504 U.S. 960, 112 S.Ct. 2315, 119 L.Ed.2d 235;State v. Thomas (1980), 61 Ohio St.2d 223, 225.
In the instant case, a review of the record demonstrates that joinder was proper since the offenses were part of a continuing course of criminal conduct. The indicted offenses of burglary, having a weapon while under a disability, and abduction all occurred in two separate instances within one year. In each case Kole was acting as a bail bondsman and entered onto the property of third parties to attempt the apprehension of bail jumpers. The like nature of the separate offenses confirms that the offenses were part of a continuing course of criminal conduct rendering joinder proper under Crim.R. 8(A).
Furthermore, Kole has also failed to demonstrate that he was prejudiced as a result of the joinder. Crim.R. 14. In order to demonstrate prejudice:
 A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.
 State v. Torres (1981), 66 Ohio St.2d 340, syllabus. The state can counter a defendant's claim of prejudice by demonstrating that each of the crimes joined at trial have simple and direct proofs. State v. Lott (1990), 51 Ohio St.3d 160, 163-164, cetiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. The Ohio Supreme Court has stated that it is unlikely that a jury would be confused where two crimes are of the same or similar character. Franklin, supra, at 123.
In the case at bar, the evidence of two instances of criminal conduct was simple and direct. In the first case, Kole attempted to apprehend Rodriguez by entering onto the property of a third party without consent and restraining Rodriguez's eighteen-year-old friend Nicole Williams by handcuffing her at gunpoint. Kole then ordered Williams against her will to drive her car around the neighborhood in an attempt to flush out Rodriguez. In the second case, Kole attempted to apprehend Cobb by entering the apartment of McAuliffe without consent, and screaming at McAuliffe at gunpoint in an attempt to determine if he was Cobb. After determining that McAuliffe was not Cobb, Kole's companion proceeded to search McAuliffe's residence. Accordingly, this Court concludes that there was simple and direct proof for each of the crimes, and, therefore, the trial court did not err in joining Kole's two indictments.
Kole's first assignment of error is overruled.
 Second Assignment of Error THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF APPELLANT'S CRIMINAL RECORD.
 Kole next alleges that the trial court erred when it permitted the introduction of evidence of his past convictions. Specifically, Kole argues that probation officer Joseph Pagano should not have been permitted to testify before the jury to prove an element in the charge of having a weapon while under a disability. This assignment of error is without merit.
As a threshold matter, this Court notes that Kole failed to object to the testimony of probation officer Pagano at trial. It is well settled that a failure to timely object when an alleged error occurred constitutes a waiver of the claim on appeal. Statev. Maurer (1984), 15 Ohio St.3d 239, 260, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.E.2d 728. At trial, the defense failed to timely object to the evidence of his prior convictions.[1] Accordingly, the claim is deemed waived.
Since Kole failed to object to the evidence of his prior convictions this Court examines Kole's claim under the plain error rule. Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. The Ohio Supreme Court has set forth the standard for plain error: "The appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred."State v. Slagle (1992), 65 Ohio St.3d 597, 605, certiorari denied (1993), 510 U.S. 833, 114 S.Ct. 106, 126 L.Ed.2d 72.
R.C. 2923.13, having a weapon while under a disability, provides:
 Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
 (2) The person is under indictment for or has been convicted of any felony offense of violence * * *.
 In order to sustain their burden of proof on the foregoing offense, the state was required to submit evidence that Kole was convicted of a prior violent felony. For that limited purpose then, evidence of a prior conviction is properly admitted as relevant evidence toward an element of the offense of having a weapon while under a disability. See Evid.R. 401, 402, and 403.
Kole argues that the evidence of his prior conviction caused him unfair prejudice. This Court does not agree.
Kole complains of the functional equivalent of what he himself stipulated to before trial:
 [DEFENSE COUNSEL] WIRTZ: Your Honor, at this time I would also state that Michael would stipulate to the prior convictions and to his identity in those prior convictions the Weapons under Disability Charge, Your Honor, and we would have a stipulation that could go to the Jury rather than putting on the probation officer and booking photos and things of that nature which are grossly prejudicial to him in front of a Jury and we would stipulate to those findings, that he does have a record in Cuyahoga County for Involuntary Manslaughter and for a misdemeanor Assault.
 Essentially the defendant had no objection to the admission of the identity of his prior convictions. The record reveals that Kole's pre-trial objection was a matter of form (how the evidence of previous convictions was presented to the jury) as opposed to substance (the actual evidence of the previous convictions). By his own proffered stipulation Kole accepted that the jury should know about his two prior convictions. Based on the foregoing, the doctrine of invited error applies. Under that doctrine, "(a party will not be permitted to take advantage of an error which he himself invited or induced the court to make.'" State v. Brintzenhofe (May 12, 1999), Summit App. No. 18924, unreported, quoting Lester v. Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus. If it was error to allow the introduction of Kole's prior convictions, it was an error he invited, and, therefore, will not be corrected.
Kole specifically relies on Old Chief v. United States
(1997), 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574, in support of his claim that admission of his prior convictions was unfairly prejudicial. In Old Chief the United States Supreme Court held, in a 5-4 opinion, that a trial court had abused its discretion by rejecting a stipulation that the defendant had committed an offense punishable by imprisonment of more than one year and allowing the government to present the judgment entry of defendant's prior conviction for assault causing bodily injury.
Kole's reliance on Old Chief is misplaced for three reasons. First, Old Chief construed a federal statute and, therefore, is not binding upon this Court's interpretation of an Ohio statute. Second, unlike Kole, the defendant in Old Chief timely objected to the prosecution's introduction of his prior conviction into evidence. Third, the federal statute construed in Old Chief is facially dissimilar to the Ohio statute in the case at bar. InOld Chief the charge was assault with a dangerous weapon in violation of 18 U.S.C. § 922(g)(1) which makes it unlawful for any person "(who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year [to] possess * * * any firearm.'" Old Chief, 519 U.S. at 518. In the instant case, an essential element of the indicted offense of having a weapon while under disability is whether the individual possessing the weapon was previously convicted of a felony offense of violence. R.C.2923.13(A)(2). Unlike the federal statute in Old Chief, evidence concerning the name or nature of Kole's prior conviction was necessary in order for the jury to find Kole guilty of the charged offense. In order to prove the offense of having a weapon while under a disability the state was required to prove the prior conviction beyond a reasonable doubt. State v. Jordan (Apr. 29, 1999), Cuyahoga App. No. 73453, unreported, appeal not allowed (1999), 86 Ohio St.3d 1488 (distinguishing Old Chief and affirming the introduction of a prior drug trafficking conviction as an essential element of having a weapon under a disability). See, also, State v. Payne (Mar. 31, 1999), Lake App. No. 97-L-284, unreported (distinguishing Old Chief and affirming the introduction of prior driving under the influence misdemeanor convictions to prove a felony DUI charge); State v. Russell (Nov. 9, 1998), Butler App. No. CA98-02-018, unreported (distinguishingOld Chief and affirming the introduction of prior misdemeanor convictions for domestic violence in order to prove a felony domestic violence charge). Accordingly, this Court finds no plain error.
Kole's second assignment of error is denied as it is without merit.
 Third Assignment of Error THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND THE HAVING WEAPONS WHILE UNDER DISABILITY COUNT.
 In his third assignment of error Kole argues that the trial court erred when it permitted the amendment of the charge of having a weapon while under a disability. Specifically, the trial court amended the count to reflect that the legal disability arose as a result of his prior convictions for involuntary manslaughter and assault, and not burglary as originally set forth in the indictment. This Court disagrees.
A careful review of the record reveals that Kole failed to object to the amendment of the one charge of having a weapon while under a disability. The state raised its motion to amend the indictment at the close of its case, and the trial court granted the motion at the close of all the evidence, and in both instances, Kole made no objection. Therefore, the claim is deemed waived. Maurer, supra.
This Court then analyzes the trial court's action under the plain error rule. Crim.R. 52(B). This Court finds no plain error.
Amendment of indictments is governed by Crim.R. 7(D), which provides:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.
 In the instant case, the name or identity of the crime was not changed. Rather, the trial court merely cured a variance between the actual identity of the offense that gave rise to the legal disability, and the offense set forth originally in the indictment. State v. Strozier (Oct. 5, 1994), Montgomery App. No. 14021, unreported (affirming the trial court's amendment of an indictment for having a weapon under a disability charge which changed the disability as resulting from a "felony of violence" to "trafficking in any drug abuse. Moreover, the second charge for having a weapon while under a disability, for which Kole was acquitted, did set forth the accurate offenses that gave rise to Kole's disability: involuntary manslaughter and assault. The trial court properly amended the indictment in the instant case. Accordingly, this Court concludes there was no plain error.
Kole's third assignment of error is denied.
 Fourth Assignment of Error APPELLANT'S CONVICTIONS WERE BASED UPON INSUFFICIENT EVIDENCE AND AGAINST THE WEIGHT OF THE EVIDENCE.
 In his fourth assignment of error, Kole claims that his convictions for abduction and burglary were based on insufficient evidence and were against the manifest weight of the evidence. Kole also contends that as a bail bondsman he was privileged to commit the acts giving rise to his convictions. This Court affirms Kole's convictions for burglary and abduction.
In determining whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340.
Upon a review of the record, this Court finds that Kole's convictions for abduction and burglary were not against the manifest weight of the evidence.
Kole was convicted of burglary, in violation of R.C.2911.12(A)(3), which provides:
 No person, by force, stealth, or deception, shall do any of the following:
 * * * (3) Trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense.
 Kole was also convicted of abduction, in violation of R.C. 2905.02(A)(2), which provides:
 No person, without privilege to do so, shall knowingly do any of the following:
 * * * (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear.
 In the case at bar, Kole and his companion entered into the apartment of McAuliffe without his consent and while he slept. McAuliffe, clad only in his underwear, was awakened by Kole's shouting as Kole pointed a handgun at him. McAuliffe was restrained to his couch while Kole and his companion ascertained his identity and searched the apartment for fugitive Cobb. Kole's restraint of McAuliffe abated only after police were summoned to the scene by a concerned neighbor. Based on the foregoing, this Court cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice such that Kole's convictions must be reversed. Kole's argument that his convictions are against the manifest weight of the evidence are overruled.
Kole also argues that his convictions for burglary and abduction are against the sufficiency of the evidence. Such a contention is without merit. This Court has previously noted that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis sic.) State v. Roberts (Sep. 17, 1997), Lorain App. No. 96CA006462, unreported. Accordingly, having found that Kole's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence.
Kole also argues that acting in his role as a bail bondsman he enjoyed a common law privilege to make the entry into McAuliffe's home and use whatever reasonable force was necessary to apprehend Cobb. See Taylor v. Tainter (1873), 83 U.S. 366,21 L.Ed. 287. While Kole relies on Taylor, this antique case does not address the issue of whether a bail agent is privileged to enter without consent upon a third party's habitation to apprehend their principal. Id. at 371-372.
In Taylor the United States Supreme Court stated:
 When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest, by the sheriff, of an escaping prisoner. (The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of the bail in civil and criminal cases are the same. They may doubtless permit him to go beyond the limits of the state within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee. (Citations omitted.)
 Id. By the plain terms of the Taylor opinion, a bail bondsman is not authorized to forcibly enter a third party's dwelling to apprehend the principal. See Mishler v. State
(Ind.App. 1996), 660 N.E.2d 343, 345; State v. Tapia
(Minn.App. 1991), 468 N.W.2d 342, 344.
While there is an absence of controlling Ohio authority on the subject, "the decided trend is that the bondsman lacks the broad authority over a third person that he possesses with respect to the fugitive who has violated the conditions of his bail. The pivotal difference is that the defendant who agreed to the terms of the bail bond has contracted away rights that he would otherwise possess vis-a-vis the bondsman, whereas a third person has not contracted away any rights." Herd v. Maryland
(Md.App. 1999), 724 A.2d 693, 712.
A Minnesota court of appeals concluded that the common law did not expressly authorize a bail bondsman to enter upon the habitation of a third party, and was unwilling to broaden the bail bondsman's existing broad authority:
 The surety-principal contract generally authorizes the bail bondsman, or his agent, to exercise jurisdiction and control over the principal during the period for which the bond is executed. However, this contractual authority does not include the authority to infringe upon the rights of persons who are not parties to the contract.
 Tapia, supra, at 344.
A Washington court of appeals also declined to expand the bail bondsman's powers against third parties:
 It is true that a bail bondsman has certain extraordinary powers under the common law, as a result of his contract with his client. See Taylor v. Tainter, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287. However, Portnoy offers no authority for the proposition that the bondsman may sweep from his path all third parties who he thinks are blocking his search for his client, without liability to the criminal law.
 State v. Portnoy (Wash.App. 1986), 718 P.2d 805, 811, review denied by (1986), 106 Wn.2d 1013. A New Mexico court of appeals reached a like conclusion:
 [N]either the common law nor statutory authority of a bondsman to make a warrantless search of his principal absolves a defendant of criminal responsibility ensuing from the armed, unauthorized, and forcible entry into the residence of a third party.
 State v. Lopez (N.M.App. 1987), 734 P.2d 778, 783, certiorari
denied (1987), 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160.
"The seemingly absolute powers granted to bondsmen at common law are not without restriction and must be interpreted in light of modern common law and constitutional principles." State v.Vinson (Nov. 27, 1985), Hamilton App. No. C-840914, unreported, citing Maynard v. Kear (N.D.Ohio. 1979), 474 F. Supp. 794,802.[2]
This Court is persuaded by the modern rationale presented by the courts of appeals in Maryland, Minnesota, Indiana, Washington, and New Mexico that a bail bondsman's broad authority to use reasonable and necessary force against a fugitive and his home does not extend to third parties.
In reaching this conclusion, this Court is mindful of the important function that bail bondsmen perform in returning fugitives before the law. It is beyond peradventure that the profession of the bail bondsman can be dangerous. Yet reposing unfettered power in bail bondsmen over third persons presents a danger to the community, devolving its peace into a Wild West like spate of forced entries, drawn guns, and third party abductions. This Court will not sanction lawlessness visited upon third parties in the name of a bail contract. To hold otherwise would render the rights of third parties a nullity upon a bail contract to which they were never a party. The image of the freewheeling bounty hunter bursting into the homes of third parties in pursuit of their bounty, heedless of the law or the constitution, may be the romantic archetype, but it is an image unsupported by controlling authority in Ohio. In short, some lines must be drawn upon the broad authority of the bail bondsman.
This Court concludes that bail bondsmen have broad authority to use reasonable and necessary force against fugitives, including, where reasonable, a forced entry into the home of the fugitive. However, this broad authority does not extend to infringe upon third parties who are not parties to the bail contract.
In the instant case, McAuliffe was a third party who was not a party to the bail contract, and there was scant evidence to establish that fugitive Cobb was residing at McAuliffe's apartment. Therefore, Kole did not have the authority to enter McAuliffe's dwelling without consent and hold him at gunpoint while he sought Cobb.
Assuming, arguendo, that Kole had the authority to use reasonable force to enter upon a third party's dwelling to apprehend a fugitive, this Court concludes that Kole's use of force was unreasonable on the facts of this particular case. Kole forcibly entered McAuliffe's apartment based solely on an anonymous tip that a fugitive was staying there. Kole undertook no effort to corroborate this information. Making a forced entry without judicial approval on such tenuous information as an unidentified anonymous tip has been found to be unreasonable by other courts. Hayes v. Goldstein (1997), 120 Ohio App.3d 116;Herd, supra. See, also, Livingston v. Browder (Ala.App. 1973),285 So.2d 923, 927 (reviewing court noting the reasonableness of the bail bondsman who actually observed his target before entering the third party's home).
Accordingly, Kole's fourth assignment of error is denied.
 Fifth Assignment of Error APPELLANT'S RIGHT TO DUE PROCESS OF LAW WAS DENIED AS A RESULT OF PROSECUTORIAL MISCONDUCT.
 In his fifth assignment of error Kole claims that the prosecutor engaged in prejudicial conduct which deprived him of a fair trial. Specifically, Kole points to the argument of the prosecutor imploring the jury not to tolerate the actions and methods of Kole in this case. This Court finds no misconduct in the argument of the state.
At the outset, this Court notes that Kole failed to object to the prosecutor's closing argument. The Ohio Supreme Court has held that an appellate court will not review an alleged error which was not brought to the attention of the trial court.Maurer, supra, at 260. Therefore, Kole has waived the error on appeal.
Because the statement was not objected to by the defense, we examine its prejudicial effect only under the plain error rule. It is well settled that notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Long, supra, at paragraph three of the syllabus. "The appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred."Slagle, supra, at 605. More specifically, alleged errors which are not objected to may only be reversed by a reviewing court if they amount to plain error, that is, if a defendant would clearly have been acquitted but for the alleged error. State v. Waddy
(1992), 63 Ohio St.3d 424, 437, certiorari denied (1992),506 U.S. 921, 113 S.Ct. 338, 121 L.Ed.2d 255.
"([T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" Slagle, supra, at 606, quoting Smith v. Phillips (1982), 455 U.S. 209, 219. The remarks of the prosecutor must be reviewed in the context of the entire closing argument. State v. Frazier (1995), 73 Ohio St.3d 323,342, certiorari denied (1996), 56 U.S. 1095, 116 S.Ct. 820,133 L.Ed.2d 763.
In the instant case, the prosecutor's argument that Kole's actions and methods should not be tolerated was akin to a request to maintain community standards, which the Ohio Supreme Court has determined is not prejudicial argument. State v. Williams (1986),23 Ohio St.3d 16, 20.
Upon review of the prosecutor's entire closing argument, this Court concludes that the prosecutor's comments were proper and did not deprive Kole of a fair trial. Kole's fifth assignment of error is overruled.
 Sixth Assignment of Error THE TRIAL COURT'S AMPLIFICATION OF THE APPELLANT'S RIGHT TO ARREST VIOLATED APPELLANT'S RIGHT TO DUE PROCESS OF LAW.
 State's Cross Assignment of Error THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY ON "PRIVILEGE" AND ON TRESPASS.
 Kole's sixth assignment of error and the state's cross assignment of error are treated together as they raise similar issues of law and fact.
Kole argues that the trial court improperly instructed the jury as to the authority of a bail bondsman, and to what degree that authority extends to third parties.[3]
As a threshold matter, this Court notes that Kole failed to object to the allegedly erroneous instruction when it was pronounced to the jury. Failure to object to the giving of an instruction at the time of the charge constitutes a waiver of the claim on appeal.[4] Crim.R. 30(A). This Court has faithfully applied the plain command of Crim.R. 30(A): "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless but for the error, the outcome of the trial clearly would have been otherwise." State v. Lothridge
(Apr. 17, 1991), Lorain App. No. 90CA004878, unreported, appeal not allowed (1991), 62 Ohio St.3d 1414, citing State v. Underwood
(1983), 3 Ohio St.3d 12, syllabus. Accordingly, Kole has waived this claim of error.
This Court then proceeds to evaluate Kole's claim under the doctrine of plain error. Crim.R. 52(B). A bail bondsman may not infringe upon third parties who are not parties to the bail contract.[5] The trial court correctly charged in its burglary instruction that Kole had the authority to make the forced entry if the jury concluded that Kole reasonably believed that fugitive Cobb was a resident of the dwelling at 325 Columbus Street in Elyria. On the abduction charge, the trial court instructed that if Kole believed that third party William McAuliffe was impeding his arrest of Cobb, then Kole was privileged to use such force as he would use against the principal. Because this Court has concluded that a bail bondsman does not have the authority to infringe upon a third party, the trial court's instruction on abduction was not prejudicial to Kole, but rather, expanded the authority of the bail bondsman. This unwarranted expansion of the rights of the bail bondsman inured to Kole's benefit, not detriment. Accordingly, this Court finds no plain error.
Kole's sixth assignment of error is overruled. The state's cross appeal is therefore rendered moot by the disposition of Kole's sixth assignment of error.
 Seventh Assignment of Error APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 In his seventh assignment of error, Kole argues that his counsel was ineffective for not objecting to the prosecutor's closing argument. This claim is without merit.
In Strickland v. Washington (1984), 466 U.S. 668, 687, the United States Supreme Court set forth the two-part standard for resolving ineffective counsel claims:
 First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy. Id. at 689, 694-695; State v. Thompson
(1987), 33 Ohio St.3d 1, 10. The court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.
As discussed supra in assignment of error five, the state's closing argument was proper. Defense counsel acted reasonably by not objecting to admissible argument. Therefore, Kole has failed to show that his counsel was prejudicially deficient.
Kole's seventh assignment of error is denied.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant/Cross-Appellee.
Exceptions.
 __________________ DONNA J. CARR
SLABY, P.J., WHITMORE, J., CONCUR.
[1] Kole argues that he requested a stipulation before trial, thereby preserving the issue for appeal. However, it is axiomatic that the failure to object to evidence at trial constitutes a waiver of any challenge, regardless of any motions or rulings made at the pre-trial stage. State v. Wilson (1982), 8 Ohio App.3d 216. Here, Kole failed to object to the evidence of his prior convictions at trial. Therefore, the claim is deemed waived.
[2] Kole cites to Maynard v. Kear as support for the proposition that a bail bondsman can enter into a third party dwelling to apprehend a fugitive. Kole overstates the law ofMaynard. Factually, the Maynard case involved a civil action concerning the authority of the bail bondsman to forcibly enter upon the dwelling of the fugitive. Id. at 797, 803. The issue of a third party dwelling was not part of the factual milieu of the case. Therefore, the court's statement that "the bondsman has the right pursuant to the bail contract or common law to arrest the principal at any time and at any place and to redeliver the principal into the hands of the public jailor," is best viewed as a statement relating solely to the dwelling of the fugitive and not that of a third party. Id. at 802. A more expansive interpretation would be legal alchemy transforming dicta into a rule of law.
[3] Considering that the defendant's sixth assignment of error raises the same core issue that the state attempts to raise on its cross appeal, resolution of the defendant's claim necessarily renders the state's redundant cross appeal moot.
[4] The fact that Kole filed proposed instructions before trial does not operate to excuse his failed duty to object to the instruction at trial. Crim.R. 30.
[5] See assignment of error four, supra.